# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

        Plaintiff,

    v.                                  No. **CR 04-1106 MCA**

**KYLE LEE MARTIN**,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on the *United States' Motion in Limine to Determine That the Defendant's Prior Assault and Battery Conviction is a Misdemeanor Crime of Domestic Violence* [Doc. No. 19] filed on March 23, 2005, the United States' *Notice of Rule 404(b) Evidence or in the Alternative, Motion in Limine* [Doc. No. 27] filed on March 31, 2005, and the *United States Request for a Pre-Trial Hearing on It's Motion in Limine* [Doc. No. 32] filed on April 4, 2005. Per the Government's request, the Court held a hearing on the motions in limine on April 7, 2005. Having reviewed the parties' written submissions and oral arguments, the relevant law, and being fully advised in the premises, the Court grants the motions in part and denies the motions in part for the reasons set forth below.

## I.      **BACKGROUND**

The *Indictment* [Doc. No. 1] charges Defendant Kyle Lee Martin with one count of violating 18 U.S.C. §§ 922(g)(9) and 924(a)(2) by knowingly possessing a firearm after having been convicted of a crime of domestic violence,  namely assault and battery.  In support of its first motion in limine, the Government has submitted a copy of a *Judgment and Sentence* which purports to show that on February 23, 1995, Defendant was found guilty of assault and battery in Cause No. 29-1-95-1214-F filed in the Magistrate Court of Sandoval County, in the State and District of New Mexico.  [Ex. 1 to Doc. No. 19.]  In his response to the Government's first motion, Defendant acknowledges and stipulates to these facts concerning his prior conviction pursuant to Old Chief v. United States, 519 U.S. 172 (1997). [Doc. No. 30.]

Based on Defendant's stipulation and the copy of the state court's *Judgment and Sentence* cited above, the Government asks this Court to determine as a matter of law that the Defendant's prior conviction for assault and battery constitutes a "misdemeanor crime of domestic violence" for purposes of the federal charge on which he is indicted in this case. Defendant opposes the Government's request.   He asks the Court to determine as a matter of law that his prior conviction for assault and battery does not constitute a "misdemeanor crime of domestic violence" under the relevant federal statutes, or, in the alternative, that the Government is required to prove this contention beyond a reasonable doubt.

The Government has filed a second motion in limine notifying Defendant and the Court of its intent to introduce *res gestae* evidence pursuant to Fed. R. Evid. 404(b).  This

evidence consists of testimony from the law enforcement officers who apprehended Defendant and allegedly found that he possessed the firearm which provides the basis for the current *Indictment*. According to the Government's proffer, the arresting officers' testimony will include an explanation of the circumstances that caused them to pursue and apprehend Defendant, and the circumstances under which they located the firearm at issue in this case. [Doc. No. 27.]

## II.   ANALYSIS

### A.   Motion in Limine Regarding Use of Prior Convictions

Trial courts generally are vested with broad discretion regarding evidentiary rulings on motions in limine. See generally United States v. Wagoner County Real Estate, 278 F.3d 1091, 1099 (10th Cir. 2002). More careful scrutiny is required in this case, however, because the Government's first motion in limine calls for a legal determination concerning the essential elements of the federal offense of possessing a firearm after having been convicted of a misdemeanor crime of domestic violence. The determination of what evidence is relevant and admissible at trial depends on the Court's resolution of this legal question concerning the essential elements of the offense on which Defendant will be tried.

Reported challenges to the Government's use of a prior conviction as an underlying offense to support a subsequent federal firearms charge under 18 U.S.C. § 922(g)(9) generally fall into three categories: (1) those that seek to exclude underlying state offenses that do not specify the domestic relationship between the assailant and the victim as an essential element; (2) those that seek to exclude underlying state offenses that do not include

the use or attempted use of physical force, or the threatened use of a deadly weapon, as an essential element; and (3) those for which the prior conviction regarding the underlying offense is unreliable or invalid because it was not supported by a knowing and intelligent waiver of the defendant's rights to counsel and a jury trial, or because it was later set aside, expunged, or pardoned.  The methodology for addressing these challenges may have been affected by the restrictions on judicial factfinding contained in the Supreme Court's recent opinion in <u>Shepard v. United States</u>, 125 S. Ct. 1254, 1262 (2005).

Neither the Government's motion nor Defendant's response cite any authority identifying what type of challenge is at issue here.  The parties' motion papers also do not address how such challenges are affected by <u>Shepard</u>, and this issue was not addressed until the Court raised it at the hearing.  Regardless of the lack of clarity in the parties' motion papers, the starting point for the Court's inquiry is the language of the federal statute itself.

18 U.S.C. § 922(g)(9) provides, in relevant part, that:  "It shall be unlawful for any person . . . who has been convicted in any court of misdemeanor crime of domestic violence . . . to possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  The penalties for violating this statutory provision are set forth in 18 U.S.C. § 924(a)(2).  The phrase "misdemeanor crime of domestic violence" is defined in 18 U.S.C. § 921(a)(33)(A) as:

an offense that--

(i) is a misdemeanor under Federal or State law;  and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

Two exceptions to this definition are provided in 18 U.S.C. § 921(a)(33)(B), which states that:

(B)(i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless--

(I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case;  and

(II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either

(aa) the case was tried by a jury, or

(bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

(ii) A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

See generally United States v. Hartsock, 347 F.3d 1 (1st Cir. 2003) (treating the exceptions stated in 18 U.S.C. § 921(a)(33)(B) as affirmative defenses).

Based on the statutory language recited above, Courts have held that the essential elements of a federal firearms offense under 18 U.S.C. § 922(g)(9) are:

(1) that the defendant was previously convicted of a misdemeanor that has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon; (2) that, subsequent to that conviction, defendant [knowingly] possessed certain firearms [with the requisite nexus to interstate commerce], and (3) that the victim of the defendant's prior offense was in a domestic relationship with him.

United States v. Kavoukian, 315 F.3d 139, 145 (2d Cir. 2002).[1]  Absent appropriate stipulations pursuant to Old Chief, 519 U.S. at 174, "[t]he government should be allowed to use any admissible evidence to meet its burdens on those issues at trial," Kavoukian, 315 F.3d at 145 n.4.

Assault and battery are the misdemeanor crimes that the Government seeks to use as an underlying offense for the federal firearms violation charged in this case.  The state court's *Judgment and Sentence* cites two New Mexico statutes that respectively provide the legal basis for Defendant's prior assault and battery conviction:  N.M. Stat. Ann. §§ 30-3-1 and 30-3-4 (2004).  [Ex. 1 to  Doc. No. 19.]   The assault statute provides that:

Assault consists of either:

 A. an attempt to commit a battery upon the person of another;

 B. any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or

 C. the use of insulting language toward another impugning his honor, delicacy or reputation.

---

[1]Neither the knowledge element nor the interstate-commerce element of this crime were at issue in Kavokian.  Other courts have uniformly held, however, that the interstate-commerce element is satisfied by showing the firearm crossed state lines at some point, and that the knowledge element only requires the Government to show the Defendant knew he possessed the firearm, not that he knew it was illegal to possess the firearm.  See United States v. Shelton, 325 F.3d 553, 563-64 (5th Cir.2003) (collecting cases).

> Whoever commits assault is guilty of a petty misdemeanor.

N.M. Stat. Ann. § 30-3-1; see N.M. Unif. Jury Inst. 14-301 (2005).  The battery statute provides that:

> Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner.

> Whoever commits battery is guilty of a petty misdemeanor.

N.M. Stat. Ann. § 30-3-4; see N.M. Unif. Jury Inst. 14-320 (2005).  Although Defendant was convicted of violating both of these statutes, the focus of the Court's analysis is on the battery statute.

### 1.        Domestic Relationship Between the Assailant and the Victim

Neither the assault statute nor the battery statute specifically provide that domestic violence or a domestic relationship between the assailant and the victim is an essential element of these crimes.  The omission of this element from these New Mexico statutes may give rise to a claim that the crimes of assault and battery do not qualify as underlying offenses for the federal firearms violation alleged here because they do not meet the statutory definition of a "misdemeanor crime of domestic violence."

This claim is without merit.  Federal courts are in agreement that the nature of the relationship between the assailant and the victim need not be an essential element of the underlying offense for purposes of proving a violation of the federal firearms statute at issue here.  Rather, the question whether the victim of Defendant's prior offense was in a domestic relationship with him, as defined in 18 U.S.C. § 921(a)(33)(A), is for the factfinder to

determine at the trial concerning the federal firearms offense.  See Kavoukian, 315 F.3d at 142-45; United States v. Nason, 269 F.3d 10, 15 (1st Cir. 2001); United States v. Meade, 175 F.3d 215, 218-21 (1st Cir.1999); United States v. Shelton, 325 F.3d 553, 561-6 (5th Cir.2003); United States v. Smith, 171 F.3d 617, 620 (8th Cir.1999); United States v. Chavez, 204 F.3d 1305, 1313-14 (11th Cir.2000); United States v. Belless, 338 F.3d 1063, 1066 n.6 (9th Cir. 2003); United States v. Barnes, 295 F.3d 1354, 1359-66 (D.C.Cir.2002); White v. Dept. of Justice, 328 F.3d 1361, 1364-67 (Fed.Cir.2003).

It follows that this Court cannot make a legal determination, based solely on the state court's *Judgment and Sentence*, as to whether the victim of Defendant's prior assault and battery was in a domestic relationship with him.  While it is the Court's duty to instruct the jury that such a relationship is an essential element of the federal firearms offense and to provide the jury with the relevant statutory definition of what constitutes a "domestic relationship," it is ultimately for the jury to decide whether the Government has met its burden of proof as to this element at trial.  The Supreme Court's recent holding in Shepard, 125 S. Ct. at 1262, further underscores this conclusion.  Accordingly, evidence or stipulations concerning Defendant's relationship with the victim of his prior assault and battery are relevant for the purpose of proving facts necessary to the Government's case-in-chief at trial.

Defendant asserts that such stipulations or evidence regarding his domestic relationship with the victim will be unfairly prejudicial because they would require the jury to consider the details of his prior criminal history.  This assertion is incorrect.  Because a

domestic relationship is an essential element of the offense with which Defendant is currently charged, evidence necessary to establish this element is sufficiently probative to outweigh the danger of unfair prejudice.   Further, A "domestic relationship" under 18 U.S.C. § 922(a)(33)(A) simply means that, at the time of the prior offense, the Defendant was a current or former spouse of the victim, a parent or guardian of the victim, a person with whom the victim shares a child in common, a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or a person similarly situated to a spouse, parent, or guardian of the victim.  Thus, for example, such a relationship may be established through evidence showing the simple fact that the victim was, at the time of the prior offense, the Defendant's spouse or former spouse, or a person with whom he shares a child in common.  It is unnecessary to go into details concerning the abusive nature of the relationship in order to establish this element.

Defendant also asserts that in order to prove his domestic relationship with the victim of his prior battery offense, the Government must first identify and prove who the victim of that prior offense was.  While this assertion is correct, it does not necessarily follow that the Government is required to relitigate and prove that a battery actually occurred or that a particular individual actually was a victim of Defendant's prior offense.  Defendant has already stipulated to his prior convictions, and the *Judgment and Sentence* attached to the Government's motion indicates that these prior convictions resulted from a plea and disposition agreement rather than a trial.  [Ex. 1 to Doc. No. 19.]  Thus, for purposes of establishing the domestic-relationship element, the Government need only establish the

9

identity of, and relationship with, the victim of *the crime to which Defendant pleaded guilty*.

Insofar as such facts depend on the terms of Defendant's plea agreement and what charges he admitted in the course of his guilty plea, it is irrelevant whether the victim identified in those charges now subjectively believes that Defendant is guilty or innocent of battery.  Assuming the necessary foundation is laid, the Government may introduce court records to establish the verbal act or operative fact of entering into a plea agreement and pleading guilty to a particular charge.  See generally 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 801.11[3], at 801-17 to 801-18 (2d ed. 2005) ("[T]he hearsay rule does not exclude relevant evidence as to what the contracting parties said or wrote with respect to the making or the terms of an agreement.").  Further, the Confrontation Clause does not apply to Defendant's own admissions or verbal acts concerning his guilty plea to the prior offense, including adoptive admissions and admissions by an authorized agent such as his attorney.  See generally Fed. R. Evid. 801(d)(2); United States v. Williams, 104 F.3d 213, 216-17 (8th Cir. 1997) (pleading guilty to underlying offense was an admission by party opponent in prosecution of federal firearms violation); United States v. Jinadu, 98 F.3d 239, 244-45 (6th Cir. 1996) (answering "yes" to a government official's accusatory statement was an adoptive admission by a party opponent).

## 2.    Use or Attempted Use of Physical Force

The determination of Defendant's relationship with the victim of the prior assault and battery does not end the inquiry, for the Court must still determine the legal sufficiency of the evidence concerning the other essential elements of the federal firearms offense as they

relate to the underlying state offenses of assault and battery.  The authorities cited above are in agreement that in order to qualify as a "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 924(a)(33)(A), at least one of the underlying state offenses for which Defendant was convicted must have, as an element, "the use or attempted use of physical force, or the threatened use of a deadly weapon."  Kavoukian, 315 F.3d at 145. Determining the essential elements of the respective offenses appears to be a legal question for the Court to decide, at least insofar as the Court's analysis of this question remains within the confines of the "categorical approach" referenced in Shepard, 125 S. Ct. at 1257-58 (citing Taylor v. United States, 495 U.S. 575, 602 (1990)).

In answering this legal question, courts disagree as to whether the type of simple battery statute at issue here contains the required element of "the use or attempted use of force, or the threatened use of a deadly weapon."  Construing a Wyoming law with language similar to New Mexico's battery statute, the Ninth Circuit has held that simple battery does not contain the required element of "use or attempted use of physical force" because the statutory language can be hypothetically construed to encompass "*de minimis*" touching and "mere impolite behavior," and such behavior is not sufficiently serious to fall within the scope of prohibited conduct that Congress intended.  Belless, 338 F.3d at 1068.  To support this result, the Ninth Circuit relies on an exotic hypothetical scenario in which former President Nixon might have been convicted under Wyoming's battery statute for jabbing his finger in Nikita Kruschev's chest during a political argument in 1959.  See id.

I find the Ninth Circuit's reasoning in Belless to be unpersuasive in light of the weight

of authority from other circuits.  <u>See, e.g.</u>, <u>Nason</u>, 269 F.3d at 15-21 (concluding that

"offensive physical contact" under Maine's assault statute contained the necessary element

of "use or attempted use of physical force"); <u>Shelton</u>, 325 F.3d at 558-61 (reaching a similar

conclusion with respect to Texas' misdemeanor assault statute); <u>Smith</u>, 171 F.3d at 620-21

(reaching a similar conclusion with respect to Iowa's assault statute).  These authorities

eschew the use of exotic hypothetical scenarios in favor of examining the language and

purpose of the statute in light of actual cases.  <u>See</u> <u>Shelton</u>, 325 F.3d at 561.

In scrutinizing statutory language, courts presume, "absent evidence to the contrary,

that Congress knew and adopted widely accepted legal definitions of meanings associated

with the specific words enshrined in the statute."  <u>Nason</u>, 269 F.3d at 16.  Applying the

"usual and customary meaning of the phrase 'physical force,'" it is clear that "Congress

intended section 922(g)(9) to encompass crimes characterized by the application of *any*

physical force," rather than just the subset of physical force which causes bodily injury or

employs a weapon.  <u>Id.</u> at 18.

There is also a common and widely accepted meaning associated with assault and

battery statutes that refer to "offensive physical contact," Me. Rev. Stat. Ann. tit. 17-A, §

207(1), or touching of a person that is "done in a rude, insolent, or angry manner," N.M. Stat.

Ann. § 30-3-4.  These statutes employ a "reasonable person" standard and other common-law

concepts borrowed from the <u>Restatement (Second) of Torts</u> §§ 18, 19 (1965), to limit which

physical contacts or touchings may qualify as offensive, rude, insolent, or angry.  <u>See</u> <u>Nason</u>,

269 F.3d at 18-20 (citing <u>State v. Pozzuoli</u>, 693 A.2d 745, 747 (Me. 1997) and <u>State v.</u>

Rembert, 658 A.2d 656, 658 (Me. 1995)); cf. State v. Ortega, 113 N.M. 437, 439-41, 827 P.2d 152, 154-56 (Ct. App. 1992) (citing Restatement, supra, § 18, and approving use of "authority relating to common law battery concepts" to aid interpretation of New Mexico's criminal battery statutes).

These assault and battery statutes also employ a *mens rea* requirement to limit the reach of the statutory language to physical contacts or touchings that are "intentional" and "unlawful."  N.M. Stat. Ann. § 30-3-4; accord Nason, 269 F.3d at 19 (citing Me. Rev. Stat. Ann. tit. 17-A, § 207(1)).  By making "unlawfulness" an essential element of battery crimes, New Mexico courts exclude from the reach of the statute those physical contacts or touchings which are undertaken in self-defense, in the course of lawful arrest or confinement, or for other lawful reasons.  See generally N.M. Unif. Jury Inst. 14-320 Use Note 3 (citing N.M. Unif. Jury Inst. 14-132 (2005)); see, e.g., State v. Griffin, 2002-NMCA-051, ¶ 13, 132 N.M. 195, 46 P.3d 102.  Such lawful reasons would presumably  include First Amendment guarantees of free expression.  Cf. State v. Parrillo, 94 N.M. 98, 99, 607 P.2d  636, 637 (Ct. App. 1979) (noting "the first amendment weakness of" N.M. Stat. Ann. § 30-3-1(C)); N.M. Unif. Jury Inst. 14-301 Committee Commentary (similar).  Thus, there is no danger that the Belless court's hypothetical scenario involving former President Nixon's political argument with Nikita Kruschev would fall under the common and widely accepted meaning of assault and battery statutes as applied in actual cases.

I also disagree with the Belless court's application of the principle of statutory construction known as "*noscitur a sociis*" to limit the reach of the federal firearms statute at

issue here.  According to the <u>Belless</u> court's reasoning, the meaning of doubtful words or phrases may be determined by reference to associated words and phrases, and the statute's disjunctive use of the phrase, "threatened use of a deadly weapon," suggested that Congress only intended 18 U.S.C. § 921(a)(33)(A) and 922(g)(9) to extend to "gravely serious threat[s] to apply physical force," rather than "conduct that is minimally forcible, though ungentlemanly." <u>Belless</u>, 338 F.3d at 1068.

It is unnecessary to resort to such arcane principles of statutory construction to ascertain the true intent and purpose of the federal statute making it unlawful to possess firearms after having been convicted of a "misdemeanor crime of domestic violence" as that term is defined in 18 U.S.C. § 921(a)(33)(A).  The phrase "use or attempted use of physical force" in that statutory definition contrasts with the more specific and limited definition provided in 18 U.S.C. § 922(g)(8)(C)(ii), which pertains to persons "subject to a court order that . . . by its terms explicitly prohibits the use, attempted use, or threatened use of physical force . . . *that would reasonably be expected to cause bodily injury.*"  (Emphasis added.)  In light of this contrast, the more applicable principle of statutory interpretation is that "when Congress inserts limiting language in one section of a statute but abjures that language in another, closely related section, the usual presumption is that Congress acted deliberately and purposefully in the disparate omission."  <u>See</u> <u>Nason</u>, 269 F.3d at 16.

This presumption is further supported by the legislative history and purpose of the statutory provision regarding "misdemeanor crimes of domestic violence."  "A 'statute should ordinarily be read to effectuate its purposes rather than to frustrate them.'"  <u>Barnes</u>,

14

295 F.3d at 1364 (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Ruckelshaus, 719 F.2d 1159, 1165 (D.C. Cir. 1983)).  It is generally acknowledged that the federal statute at issue here, "known as the 'Lautenberg Amendment,' was enacted in order to remedy the nationwide problem that those convicted of a felony involving domestic assault were prohibited from firearms possession while those convicted of a misdemeanor involving domestic assault were not."  Id. (citation omitted).  The statute would not provide such a remedy if its language regarding "use or attempted use of physical force" were limited to "gravely serious threats" involving the use of a weapon or actual bodily injury, because such gravely serious threats are generally classified as felony offenses, rather than misdemeanors, under most assault and battery statutes.  See, e.g., N.M. Stat. Ann. §§ 30-3-2, 30-3-3, 30-3-5 (Michie 2004).

For all of the above reasons, I conclude that Defendant's prior conviction under New Mexico's simple battery statute, N.M. Stat. Ann. § 30-3-4, contains the necessary element of "use or attempted use of physical force" required to qualify as an underlying "misdemeanor crime" under 18 U.S.C. §§ 921(a)(33)(A) and 922(g)(9).  In reaching this conclusion, I rely only on the statutory language cited in the state court's *Judgment and Sentence* and the stipulation contained in Defendant's response brief.  [Ex. 1 to Doc. No. 19; Doc. No. 30.]  I do not engage in any judicial factfinding concerning the actual basis for Defendant's prior conviction as reflected in police reports, witness testimony, or the like. See Shepard, 125 S. Ct. at 1262.  While questions concerning the actual factual basis for Defendant's prior convictions might otherwise be for the jury to resolve, in this case such

questions are not relevant because Defendant has stipulated to the prior convictions and the Court has already determined as a matter of law that the elements of New Mexico's battery statute necessarily involve the "use or attempted use of physical force" regardless of the actual factual basis for the prior convictions at issue in this case.

### 3.    Reliability and Validity of Prior Convictions

Courts have diverged on the issue of which party bears the burden of proving that a Defendant's prior conviction is valid and sufficiently reliable to serve as an underlying offense within the meaning of 18 U.S.C. § 921(a)(33)(B).   For example, the Ninth Circuit appears to place the burden on the Government to at least produce a written record of the prior proceedings showing that a defendant pleading guilty to a misdemeanor without the benefit of counsel was "informed of the dangers and disadvantages of self-representation before a waiver of the right to counsel will be deemed knowing and intelligent."  See, e.g., Belless, 338 F.3d at 1069.  In contrast, the First Circuit holds that the exceptions stated in 18 U.S.C. § 921(a)(33)(B) (such as lack of a knowing and voluntary waiver of the right to counsel or the right to a jury trial) constitute affirmative defenses on which defendants bear the burden of persuasion.  See Hartsock, 347 F.3d at 9.  In this context, the Fifth Circuit holds that the voluntariness of a defendant's guilty plea to a prior offense is a matter of law for the Court to determine.  See United States v. Bethurum, 343 F.3d 712, 716-17 (5th Cir. 2003).

I find it unnecessary to resolve the conflicts among these authorities in this case because the Defendant has acknowledged and stipulated that "he was found guilty of Assault

and Battery in Cause No. 29-1-95-1214-F filed in the Magistrate Court of Sandoval County, in the State and District of New Mexico," [Doc. No. 30] as evidenced by the state court's *Judgment and Sentence* indicating that Defendant was represented by counsel and that his assault and battery convictions were entered pursuant to a plea and disposition agreement [Ex. 1 to Doc. No. 19].  At the hearing on April 7, 2005, Defendant further stipulated that he was represented by counsel during the proceedings which resulted in these prior convictions.

Defendant has not provided a timely citation to any evidence or authority suggesting that his prior assault and battery convictions fall under the exceptions stated in 18 U.S.C. § 921(a)(33)(B) and therefore do not qualify as "misdemeanor crimes" under 18 U.S.C. §§ 921(a)(33)(A) and 922(g)(9).  On the contrary, his stipulation to the prior convictions constitutes a waiver of such issues.  See United States v. Meade, 175 F.3d 215, 222 (1st Cir. 1999).  I conclude based on this record that there is no need for the jury to consider evidence or receive instructions concerning the exceptions stated in 18 U.S.C. § 921(a)(33)(B) under the particular circumstances of this case.

The Court's ruling on the evidentiary ramifications of the legal determinations set forth in this *Memorandum Opinion and Order* is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial.  In particular, the parties are free to enter into additional stipulations regarding the elements of the offense with which Defendant is now charged, or to stipulate that certain issues may be tried by the Court rather than jury.

### B.     Motion in Limine Regarding *Res Gestae* Evidence

I next address the limitations that apply to the Government's introduction of *res gestae* evidence under Fed. R. Evid. 404(b). "Evidence of other crimes should not be suppressed when those facts come in as res gestae--'as part and parcel of the proof of the offense [ ] charged in the indictment.'" United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995) (quoting United States v. Gano, 560 F.2d 990, 993- 93 (10th Cir.1977)). It is not always possible, however, to establish a "bright line" that separates such *res gestae* evidence from evidence admissible for other purposes specified in Fed. R. Evid. 404(b). Kimball, 73 F.3d at 272 (citing United States v. Cook, 745 F.2d 1311, 1318 (10th Cir.1984)).

Under Fed. R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may be admitted, however, to establish motive, intent, knowledge, preparation, plan, identity, and absence of mistake or accident. See id.; United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000); United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994).

To determine whether evidence is admissible for one of the purposes stated above, the Court applies the four-part test articulated by the Supreme Court in Huddleston v. United States, 485 U.S. 681, 691-92 (1988). This test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d 1125, 1141 (10th Cir.1999)).

In this case, the Government asserts that testimony concerning the circumstances under which the arresting officers discovered the firearm is relevant and admissible under Fed. R. Evid. 404(b) for the purpose of showing Defendant's motive, knowledge, plan, and absence of mistake or accident with respect to his alleged possession of this firearm. According to the Government, some mention of the arresting officers' reasons for pursuing Defendant and the circumstances of the firearm's discovery is admissible as *res gestae* evidence because it is "part and parcel" of the proof that Defendant possessed the firearm at issue here.

The Court agrees that a limited degree of testimony regarding the arresting officers' reasons for pursuing Defendant and the circumstances under which the officers' discovered the firearm is conditionally admissible under Fed. R. Evid. 404(b) for the purpose of showing his motive, knowledge, plan, and lack of mistake or accident with respect to the firearm allegedly found in his possession.  Such testimony is relevant to the offense with which Defendant is charged, and is offered for a proper purpose, because it serves to explain why Defendant allegedly had the firearm in his possession at the time of his arrest, and because it may serve to quell doubts about whether he was aware of the firearm, whether it belonged to someone else, and whether his possession of the firearm was accidental.

The Government may also briefly elicit testimony regarding the events leading up to Defendant's arrest and the firearm's discovery in order to place that discovery in context and

for the limited purpose of explaining the basis for the arresting officers' decision to contact Defendant during this time period.  Depending on the context in which it is made, such a limited reference to these *res gestae* events may be warranted in order to avoid confusing the jury as to the nature or purpose of the officers' contacts with Defendant and the circumstances in which the firearm was found.

In reaching this conclusion, the Court does not mean to suggest that the Government may conduct a "mini-trial" detailing every possible crime that Defendant may have committed during the time leading up to and including his arrest and the discovery of the firearm.  Unless it is properly limited in scope, such evidence could shift the focus of attention of the jury to other matters not legally relevant to the question of Defendant's guilt as to the pending charge.  I caution the Government to avoid eliciting excessively detailed testimony on these topics that would shift the focus of the jury's attention in this manner.

Subject to the limitations stated herein, the Court determines that the probative value of the anticipated evidence regarding the arresting officers' reasons for approaching Defendant and the circumstances in which the firearm was discovered is not substantially outweighed by the danger of unfair prejudice or other considerations listed in Fed. R. Evid. 403.  In addition, the Court will offer to provide a limiting instruction on this issue, with input from counsel, in order to mitigate the potential for unfair prejudice or juror confusion occasioned by the admission of such evidence.

The Court's ruling on this motion also is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial.

III.   **CONCLUSION**

For the foregoing reasons, the Government's motions in limine are granted in part and denied in part under the conditions specified above.

**IT IS, THEREFORE, ORDERED** that the *United States' Motion in Limine to Determine That the Defendant's Prior Assault and Battery Conviction is a Misdemeanor Crime of Domestic Violence* [Doc. No. 19] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

**IT IS FURTHER ORDERED** that the United States' *Notice of Rule 404(b) Evidence or in the Alternative, Motion in Limine* [Doc. No. 27] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

**IT IS FURTHER ORDERED** that the *United States Request for a Pre-Trial Hearing on It's Motion in Limine* [Doc. No. 32] is **GRANTED** as stated at the hearing on April 7, 2005.

**SO ORDERED** this 11th day of April, 2005, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE